**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SPRINKLR, INC. SECURITIES LITIGATION | **Case No. 1:24-cv-06132**<br><br>**CLASS ACTION**<br><br>Honorable Lorna G. Schofield |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page(s)**

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... iii

I.   INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF FACTS ..............................................................................................2

     A.  Sprinklr's Core Suite and Sprinklr Service...........................................................2

     B.  Sprinklr's Secret Diversion of Core Suite Resources and Manpower ...................3

     C.  The Concealed Risks To Sprinklr Service .............................................................3

     D.  Defendants Misrepresent Sprinklr Service and Core Suite Throughout 2023.....................4

     E.  The Truth is Disclosed in Two Partial Disclosures ...............................................5

III. ARGUMENT....................................................................................................................6

     A.  Applicable Pleading Standards Do Not Favor Dismissal ......................................6

     B.  The Complaint Adequately Alleges Misrepresentations and Omissions...........................6

          1.  Defendants omitted material facts from their discussion of Core Suite and Sprinklr Service...........................................................................................................6

          2.  Defendants made false and misleading statements about the effects of Sprinklr's secret diversion of resources.....................................................................................10

          3.  Defendants omitted material facts from their discussion of the inflated guidance......11

          4.  Defendants' truth-on-the-market defense fails .............................................12

          5.  Defendants' statements were not vague puffery............................................14

          6.  Defendants' statements were not inactionable opinions..............................16

          7.  Defendants' statements were not forward-looking or protected by the safe harbor....17

     C.  The Complaint Exceeds the Standard for Pleading Scienter ...............................19

1. Defendants had access to, and knowledge of, the concealed information...................20

2. Defendants held themselves out as knowledgeable about misrepresented information ...................................................................................22

3. Plaintiffs' other allegations bolster scienter............................................................23

4. Defendants' motive established by Sarin's insider sales .............................................25

5. The CWs substantiating scienter are pled with sufficient particularity .......................27

6. Defendants raise no plausible competing inference.....................................................28

D. The Complaint Sufficiently Alleges Loss Causation.........................................................29

1. The Complaint alleges material stock drops following corrective disclosures............30

2. The Complaint also alleges materialization of concealed risks ...................................31

E. The Complaint Adequately Alleges Violations of §20(a) of the Exchange Act................32

CONCLUSION...................................................................................................................................32

CERTIFICATE OF COMPLIANCE .................................................................................................34

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Abely v. Aterna Zentaris, Inc.*,
    No. 12 CIV. 4711 PKC, 2013 WL 2399869 (S.D.N.Y. May 29, 2013)..................................10

*Abramson v. Newlink Genetics Corp.*,
    965 F.3d 165 (2d Cir. 2020).......................................................................................................16

*Acito v. IMCERA Grp.*,
    47 F.3d 47 (2d Cir.1995)............................................................................................................26

*Alpha Cap. Anstalt v. Intellipharmaceuticals Int'l Inc.*,
    No. 19CV9270 (DLC), 2020 WL 3318029 (S.D.N.Y. June 18, 2020) ....................................8

*Ark. Pub. Empls. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    28 F. 4th 343 (2d Cir. 2022) .....................................................................................................25

*Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*,
    18 F.Supp.3d 482 (S.D.N.Y. 2014) ..........................................................................................15

*BG Litig. Recovery I, LLC v. Barrick Gold Corp.*,
    180 F.Supp.3d 316 (S.D.N.Y. 2016)........................................................................................21

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
    556 F.Supp.3d 100 (D. Conn. 2021).........................................................................................22

*Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
    866 F.Supp.2d 223 (S.D.N.Y. 2012).........................................................................................14

*Calfo v. Messina*,
    No. 15 CIV. 4010, 2016 WL 3661548 (S.D.N.Y. July 5, 2016) ........................................8, 12

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
    750 F.3d 227 (2d Cir. 2014)......................................................................................................29

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F.Supp.3d 379 (S.D.N.Y. 2020).........................................................................................27

*City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*,
    814 F.Supp.2d 395 (S.D.N.Y. 2011).........................................................................................25

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*,
    477 F.Supp.3d 123 (S.D.N.Y. 2020)..............................................................................21, 25, 27

*Conn. Bar Ass'n v. United States*,
620 F.3d 81 (2d Cir. 2010)..................................................................................20, 23, 25

*Denny v. Canaan*,
No. 21 CIV. 3299 (JPC), 2023 WL 2647855 (S.D.N.Y. Mar. 27, 2023) ..............................24

*Diabat v. Credit Suisse Grp. AG*,
No. 23 CIV. 5874 (CM), 2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024)..............................13

*Eden Alpha CI v. Polished.com*,
No. 22-CV-6606 (NGG) (VMS), 2025 WL 296998 (E.D.N.Y. Jan. 24, 2025) .....................19

*Empls.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
794 F.3d 297 (2d Cir. 2015)........................................................................6, 7, 11, 27

*Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*,
336 F.Supp.3d 196 (S.D.N.Y. 2018)........................................................................26

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F.Supp.2d 171 (S.D.N.Y. 2010) ...............................................................8, 12, 20, 25

*Galestan v. OneMain Holdings, Inc.*,
348 F.Supp.3d 282 (S.D.N.Y. 2018)..............................................................8, 11, 12, 17

*Gauquie v. Albany Molecular Rsch., Inc.*,
No. 14 CV 6637 (FB) (SMG), 2016 WL 4007591 (E.D.N.Y. July 26, 2016).......................22

*George v. China Auto. Sys., Inc.*,
No. 11 CIV. 7533 KBF, 2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012) .................................25

*Gissin v. Endres*,
739 F.Supp.2d 488 (S.D.N.Y. 2010)........................................................................19

*Glaser v. The9, Ltd.*,
772 F.Supp.2d 573 (S.D.N.Y. 2011)........................................................................24

*Glidepath Holding B.V. v. Spherion Corp.*,
No. 04 CIV. 9758 (RJS), 2010 WL 1372553 (S.D.N.Y. Mar. 26, 2010) ..............................19

*Ho v. Duoyuan Glob. Water, Inc.*,
887 F.Supp.2d 547 (S.D.N.Y. 2012)........................................................................24

*In re Adient plc Sec. Litig.*,
No. 18-CV-9116 (RA), 2020 WL 1644018 (S.D.N.Y. Apr. 2, 2020) ...................................17

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
 529 F.Supp.3d 111 (S.D.N.Y. 2021)................................................................................15, 23

*In re Anheuser-Busch Sec. Litig.*,
 No. 19 CIV. 5854 (AKH), 2020 WL 5819558 (S.D.N.Y. Sept. 29, 2020)..............................19

*In re AOL Time Warner, Inc., Sec. Litig.*,
 503 F.Supp.2d 666 (S.D.N.Y. 2007).....................................................................................31

*In re Avon Sec. Litig.*,
 No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ........................23, 28

*In re Axsome Therapeutics, Inc. Sec. Litig.*,
 No. 22 CIV. 3925 (LGS), 2025 WL 965265 (S.D.N.Y. Mar. 31, 2025) ......................... *passim*

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
 980 F.Supp.2d 564 (S.D.N.Y. 2013)................................................................................13, 18

*In re Barrick Gold Sec. Litig.*,
 341 F.Supp.3d 358 (S.D.N.Y. 2018)......................................................................................21

*In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*,
 763 F.Supp.2d 423 (S.D.N.Y. 2011)......................................................................................23

*In re Carter-Wallace Sec. Litig.*,
 220 F.3d 36 (2d Cir. 2000)....................................................................................................19

*In re Chembio Diagnostics, Inc. Sec. Litig.*,
 586 F.Supp.3d 199 (E.D.N.Y. 2022) ......................................................................................6

*In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*,
 No. 17 CIV. 1580 (LGS), 2018 WL 2382600 (S.D.N.Y. May 24, 2018) ..........................21, 27

*In re Citigroup Inc. Sec. Litig.*,
 753 F.Supp.2d 206 (S.D.N.Y. 2010)....................................................................................8, 12

*In re Comverse Tech., Inc. Sec. Litig.*,
 543 F.Supp.2d 134 (E.D.N.Y. 2008) ......................................................................................13

*In re CRM Holdings, Ltd. Sec. Litig.*,
 No. 10 CIV. 975 RPP, 2012 WL 1646888 (S.D.N.Y. May 10, 2012)....................................26

*In re Curaleaf Holdings Sec. Litig.*,
 519 F.Supp.3d 99 (E.D.N.Y. 2021) ......................................................................................18

v

*In re Delcath Sys., Inc. Sec. Litig.*,
36 F.Supp.3d 320 (S.D.N.Y. 2014) ...........................................................7, 20, 21, 22

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
No. 14 CIV. 0950 LAK, 2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) ..............................17, 27

*In re Fairway Grp. Holding Corp. Sec. Litig.*,
No. 14 CIV. 0950 LAK AJP, 2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015) .........................28

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
618 F.Supp.2d 311 (S.D.N.Y. 2009)...................................................................14

*In re ForceField Energy Inc. Sec. Litig.*,
No. 15 CIV. 3020 (NRB), 2017 WL 1319802 (S.D.N.Y. Mar. 29, 2017) ............................27

*In re Grab Holdings Ltd. Sec. Litig.*,
No. 1:22-CV-02189 (JLR), 2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024)...............7, 8, 10, 12

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
251 F.Supp.3d 596 (S.D.N.Y. 2017)...................................................................7, 11

*In re Jiangbo Pharm., Sec. Litig.*,
884 F.Supp.2d 1243 (S.D. Fla. 2012) ...............................................................24, 25

*In re Lululemon Sec. Litig.*,
14 F.Supp.3d 553 (S.D.N.Y. 2014) ...................................................................28

*In re MBIA, Inc., Sec. Litig.*,
700 F.Supp.2d 566 (S.D.N.Y. 2010)...................................................................14

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
982 F.Supp.2d 277 (S.D.N.Y. 2013)...................................................................14

*In re Moody's Corp. Sec. Litig.*,
599 F.Supp.2d 493 (S.D.N.Y. 2009)...............................................................15, 16

*In re Moody's Corp. Sec. Litig.*,
612 F.Supp.2d 397 (S.D.N.Y. 2009)...............................................................15, 16

*In re Nokia Ojy (Nokia Corp.) Sec. Litig.*,
423 F.Supp.2d 364 (S.D.N.Y. 2006)...................................................................15

*In re Nortel Networks Corp. Sec. Litig.*,
238 F.Supp.2d 613 (S.D.N.Y. 2003)...................................................................18

vi

*In re Omnicom Grp. Sec. Litig.*
541 F.Supp.2d 546 (S.D.N.Y. 2008).................................................................................31

*In re OSI Pharms., Inc. Sec. Litig.*,
No. 04-CV-5505 (JS)(WDW), 2007 WL 9672541 (E.D.N.Y. Mar. 31, 2007) .........................6

*In re Pareteum Sec. Litig.*,
No. 19 CIV. 9767 (AKH), 2021 WL 3540779 (S.D.N.Y. Aug. 11, 2021)...............................23

*In re Petrobras Sec. Litig.*,
116 F.Supp.3d 368 (S.D.N.Y. 2015) ............................................................................15, 20

*In re Prudential Sec. Inc. Ltd. Partnerships Litig.*,
930 F. Supp. 68 (S.D.N.Y. 1996) .................................................................................18

*In re QLT Sec. Litig.*,
312 F.Supp.2d 526 (S.D.N.Y. 2004)............................................................................19, 25

*In re Romeo Power Inc. Sec. Litig.*,
No. 21 CIV. 3362 (LGS), 2022 WL 1806303 (S.D.N.Y. June 2, 2022) ....................20, 21, 22

*In re Salix Pharms., Ltd.*,
No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y. Apr. 22, 2016) ..............................17

*In re Sanofi-Aventis Sec. Litig.*,
774 F.Supp.2d 549 (S.D.N.Y. 2011).............................................................................15

*In re Sanofi Sec. Litig.*,
155 F.Supp.3d 386 (S.D.N.Y. 2016).............................................................................10

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001).....................................................................................20, 25

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 16 CIV. 6728 (CM), 2018 WL 6167889 (S.D.N.Y. Nov. 26, 2018) ..........................22, 31

*In re SolarEdge Techs., Inc. Sec. Litig.*,
No. 1:23-CV-9748-GHW, 2025 WL 1031154 (S.D.N.Y. Apr. 6, 2025) ..............................10

*In re Symbol Techs., Inc. Sec. Litig.*,
No. 05-CV-3923 DRH AKT, 2013 WL 6330665 (E.D.N.Y. Dec. 5, 2013) ..........................18

*In re Take-Two Interactive Sec. Litig.*,
551 F.Supp.2d 247 (S.D.N.Y. 2008)..............................................................................30

*In re Teva Sec. Litig.*,
    671 F.Supp.3d 147 (D. Conn. 2023)....................................................................13

*In re Vale S.A. Sec. Litig.*,
    No. 19 CV 526 (RJD) (SJB), 2020 WL 2610979 (E.D.N.Y. May 20, 2020)..........7, 14, 15, 22

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F.Supp.2d 512 (S.D.N.Y. 2011).....................................................................15

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016)...............................................................................18

*In re Wells Fargo & Co. Sec. Litig.*,
    No. 1:20-CV-04494-GHW, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)...........................32

*Inter-Local Pension Fund GCC/IBT v. Gen. Elec.*,
    445 F. App'x 368 (2d Cir. 2011) .........................................................................21

*Janbay v. Canadian Solar, Inc.*,
    No. 10 CIV. 4430 RWS, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012)................................31

*Karimi v. Deutsche Bank Aktiengesellschaft*,
    607 F.Supp.3d 381 (S.D.N.Y. 2022).....................................................................13

*Lapin v. Goldman Sachs Grp., Inc.*,
    506 F.Supp.2d 221 (S.D.N.Y. 2006).....................................................................14

*Lefkowitz v. Synacor, Inc.*,
    No. 18 CIV. 2979 (LGS), 2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019)..............................12

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir. 2005)...............................................................................31

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*,
    724 F.Supp.2d 447 (S.D.N.Y. 2010).....................................................................28

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015)..........................................................................29, 30, 32

*Lozada v. TaskUs, Inc.*,
    710 F.Supp.3d 283 (S.D.N.Y. 2024).....................................................................21

*Maloney v. Ollie's Bargain Outlet Holdings*,
    518 F.Supp.3d 772 (S.D.N.Y. 2021).....................................................................21

*Manavazian v. Atec Grp., Inc.*,
  160 F.Supp.2d 468 (E.D.N.Y. 2001) ...................................................................................15

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)..............................................................................................................6

*Meyer v. Concordia Int'l Corp.*,
  No. 16 CIV. 6467 (RMB), 2017 WL 4083603 (S.D.N.Y. July 28, 2017).................................9

*Meyer v. Jinkosolar Holdings Co.*,
  761 F.3d 245 (2d Cir. 2014)................................................................................................7

*New Orleans Emps. Ret. Sys. v. Celestica, Inc.*,
  455 F. App'x 10 (2d Cir. 2011) .................................................................................11, 17, 24

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
  709 F.3d 109 (2d Cir. 2013)...............................................................................................27

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)...................................................................................15, 22, 25

*Nutriband, Inc. v. Kalmar*,
  No. 19CV2511NGGSJB, 2020 WL 4059657 (E.D.N.Y. July 20, 2020) ........................6, 9, 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)...........................................................................................................16

*Pearlstein v. BlackBerry Ltd.*,
  93 F.Supp.3d 233 (S.D.N.Y. 2015) ....................................................................................24

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
  No. 1:16-CV-3591-GHW, 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020) ..............................18

*Puddu v. 6D Glob. Techs., Inc.*,
  No. 15-CV-8061 (AJN), 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021).................................13

*Ray v. StoneCo Ltd.*,
  No. 1:21-CV-9620-GHW, 2024 WL 4308130 (S.D.N.Y. Sept. 25, 2024).........................21, 22

*Rombach v. Chang,*
  355 F.3d 164 (2d Cir. 2004)...............................................................................................16

*Roofer's Pension Fund v. Papa*,
  No. CV 16-2805, 2018 WL 3601229 (D.N.J. July 27, 2018)...........................................26, 27

ix

*Rudani v. Ideanomics, Inc.*,
  No. 19 CIV. 6741 (GBD), 2020 WL 5770356 (S.D.N.Y. Sept. 25, 2020)..............................12

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.*,
  75 F.3d 801 (2d Cir. 1996)......................................................................................................24

*Schaffer v. Horizon Pharma PLC*,
  No. 16-CV-1763 (JMF), 2018 WL 481883 (S.D.N.Y. Jan. 18, 2018) ...................................17

*Sgalambo v. McKenzie*,
  739 F.Supp.2d 453 (S.D.N.Y. 2010).......................................................................................14

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
  348 F.Supp.3d 313 (S.D.N.Y. 2018).......................................................................................22

*Sharette v. Credit Suisse Int'l*,
  127 F.Supp.3d 60 (S.D.N.Y. 2015) ...................................................................................18, 30

*Singh v. Schikan*,
  106 F.Supp.3d 439 (S.D.N.Y. 2015).........................................................................................9

*Slayton v. Am. Express Co.*,
  604 F.3d 758 (2d Cir. 2010)....................................................................................................18

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)................................................................................6, 19, 20, 25, 26

*Tongue v. Sanofi,*
  816 F.3d 199 (2d Cir. 2016)....................................................................................................17

*United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*,
  No. 22 CIV. 4838 (LGS), 2024 WL 1312593 (S.D.N.Y. Mar. 27, 2024) ....................9, 20, 22

*Van Dongen v. CNinsure Inc.*,
  951 F.Supp.2d 457 (S.D.N.Y. 2013)..................................................................................24, 26

*Wash. State Inv. Bd. v. Odebrecht S.A.*,
  461 F.Supp.3d 46 (S.D.N.Y. 2020).........................................................................................15

*Winter v. Stronghold Digital Mining, Inc.*,
  686 F.Supp.3d 295 (S.D.N.Y. 2023).........................................................................................9

**Statutes and Rules**

Fed R. Civ. P. 12(b) ......................................................................................................................6

x

Fed. R. Civ. P. 9(b) ............................................................................................6, 11

Private Securities Litigation Reform Act of 1934 ............................................6, 11, 17

Section 10(b) of the Securities Exchange Act of 1934 ........................................13, 32

Lead Plaintiff Anthony Marcheschi ("Lead Plaintiff"), and Additional Plaintiff Naveed Nawaz (collectively, "Plaintiffs"), respectfully submit this opposition to Defendants' motion to dismiss the Complaint.[1]

## I. INTRODUCTION

This is a straightforward case of securities fraud by a company and its executives who were not honest about their decision to divert resources towards a new business, and hid known risks of that decision on the business segments they elected to starve. Specifically, when speaking positively about its business strategy and business units, Defendants concealed that: (i) just before the Class Period, Defendants secretly began to divert significant manpower and resources from Sprinklr's primary revenue driver, Core Suite, to its new business, Sprinklr Service; (ii) Defendants' undisclosed diversion almost immediately resulted in the cancellation of million dollar Core Suite contracts, failed Core Suite sales, and non-renewals, severely impacting Sprinklr's growth; (iii) Sprinklr Service had its own undisclosed risks, including that Sprinklr had not then hired the dedicated CCaaS-experienced sales force Defendants told investors was in place, and the fact that contracts in that market were 5-10 years meant that most prospective customers were already locked up with another vendor; and (iv) they had no reasonable basis to tell investors to expect $1 billion in annual subscription revenue by Fiscal Year 2027, which it withdrew as false at the end of the Class Period.

The Complaint pleads each misrepresentation in detail, including why Plaintiffs contend each was false. ¶¶88–122. Unable to dispute the allegations pled, Defendants argue that they fully disclosed the omitted information. But the text to which they refer does not even remotely disclose the particular

---

[1] Defendants are, collectively, Sprinklr, Inc. ("Sprinklr" or the "Company"), Ragy Thomas ("Thomas"), and Manish Sarin ("Sarin"). All "¶__" references are to the First Amended Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF 42). All "DM" references refer to Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint (ECF 47). Unless otherwise noted, all emphasis is supplied.

information the Complaint specifies was omitted, and is mostly boilerplate or promotional material itself. Defendants' other challenges to falsity are even flimsier, echoing arguments recently rejected in *In re Axsome Therapeutics, Inc. Sec. Litig.*, 2025 WL 965265 (S.D.N.Y. Mar. 31, 2025).

Defendants' challenges to scienter and loss causation also fail. They cannot deny well-pled factual allegations demonstrating that Defendants knew and intended to divert resources from Core Suite to launch Sprinklr Service, and knew the risks this strategy posed for Sprinklr's core business. Nor can Sarin deny that he had a motive to hide these facts while selling millions of dollars in stock. Finally, the Complaint clearly alleges that Sprinklr's shares dropped promptly after Defendants partially disclosed the concealed risks on December 6, 2023, and again after it disclosed more on June 5, 2024. That is all the law requires.

Accordingly, Defendants' motion to dismiss should be denied in its entirety, and the parties should be directed to commence discovery without further delay.

## II.    STATEMENT OF FACTS

### A.    Sprinklr's Core Suite and Sprinklr Service

Sprinklr's core business, which comprised 72.1% of Sprinklr's total revenue and 81.2% of Sprinklr's subscription revenue for Fiscal Year 2023, is its Core Suite. ¶¶25–38. As CW1 confirmed, because Core Suite products are sold using a software-as-a-service ("SaaS") model, Sprinklr could accurately forecast subscription revenue a year in advance. ¶39. While a predictable source of revenue, Core Suite's bespoke and expensive offerings required customization that limited potential growth compared to an off-the-rack solution. ¶¶39–47.

Consequently, in late 2022, Defendants decided to launch a contact-center-as-a-service ("CCaaS") offering, known as Sprinklr Service. ¶¶48–56. Whereas Core Suite centered around marketing and analytics, Sprinklr Service was a customer service solution that provided an entirely different solution and was marketed to completely different buyers, who were mostly already locked

2

into existing 5-10 year contracts much longer and rigorous sales cycles (5 to 10 years rather than a year or two), and unfamiliar, and entrenched competition. ¶¶53–61, 71. Defendants were not candid about these known challenges, and instead touted Sprinklr Service as an opportunity for exponential growth. ¶¶54–55, 62–65.

### B.    Sprinklr's Secret Diversion of Core Suite Resources and Manpower

In order to push its new Sprinklr Service business, Defendants secretly diverted the salesforce and technical resources from Core Suite to Sprinklr Service. ¶¶73–83. Specifically, while telling investors that Sprinklr Service would be sold by a dedicated, CCaaS-experienced sales force, they in fact took Core Suite salespeople, who had no CCaaS expertise, and told them to switch focus to selling Sprinklr Service. ¶¶78, 82, 140, 141. This was fully intentional: Defendants incentivized them to prioritize Sprinklr Service over Core Suite. *Id.* They also diverted development resources from Core Suite and told Core Suite customer service agents to focus predominantly on Sprinklr Service. ¶¶79, 81. This diversion was especially disastrous for Core Suite, because it was designed and sold as a bespoke, high-touch solution that necessitated constant innovation. ¶¶44–46, 74. Defendants began to see the impact of the concealed diversion almost immediately in early 2023, when Sprinklr experienced multi-million-dollar Core Suite contract cancellations, increased failure in Core Suite sales efforts, and non-renewals from existing customers. ¶¶83–84. Nevertheless, Defendants chose to hide their secret diversion of resources from Core Suite to Sprinklr Service, and its devastating impact from investors throughout the Class Period. ¶¶88–89, 92–95, 97–100, 105–12.

### C.    The Concealed Risks to Sprinklr Service

Defendants exacerbated their highly-promotional statements about the growth potential of Sprinklr Service by omitting several material, known risks. First, instead of building the dedicated CCaaS-experienced salesforce they told investors had already been hired, Defendants simply diverted Core Suite salespeople who had no CCaaS experience or contacts. ¶¶68–69, 80. Defendants told them

3

to pitch Sprinklr Service to their current Core Suite buyers, even though it knew that CCaaS products were purchased by entirely different personnel. ¶69. Defendants also omitted other internally-known impediments, including a product lacking differentiation from established competition, and the fact that many prospective buyers—once Sprinklr reached the right contacts—were already locked up in 5-10 year contracts, creating a much longer sales cycle than Core Suite. ¶¶70–71. Nevertheless, throughout the Class Period, Defendants concealed these risks when touting Sprinklr Service. ¶¶72, 88–89, 92–95, 107–08, 109–10.

### D.    Defendants Misrepresent Sprinklr Service and Core Suite Throughout 2023

From the start of the Class Period in March 2023, Defendants spoke misleadingly when discussing Sprinklr Service and Core Suite with investors, choosing to tout prospects while concealing known risks. ¶¶88–95. On June 5, 2023, Thomas again obfuscated regarding the progress of Sprinklr Service and, in response to pointed questions concerning Core Suite renewals, omitted his diversion of Core Suite resources and its disastrous impact. ¶¶92–95.

On July 12, 2023, during Sprinklr's 2023 Investor Day conference, where Defendants repeated many of these misrepresentations and incredibly claimed that Sprinklr was then on the path to generate $1 billion in subscription revenue by Fiscal Year 2027. ¶¶96–103. It was not, and Defendants were only able to sell that canard to investors by omitting then-known but undisclosed damage from starving Core Suite of resources. ¶100.

Even in September 2023, when Sprinklr and its executives unquestionably knew that the secret diversion had wreaked havoc on Core Suite business, Defendants still touted Core Suite and Sprinklr Service businesses to investors as unmitigated successes. ¶¶104–13. Defendants understood the importance of honestly conveying information regarding the progress of these businesses, because analysts repeatedly asked them about these topics. *Id.* In their answers, they continued to omit known problems.

### E.    The Truth is Disclosed in Two Partial Disclosures

On December 6, 2023, Sprinklr first began to acknowledge the impact of Sprinklr's undisclosed diversion of Core Suite resources, and the known impediments to Sprinklr Service. Thomas admitted that Sprinklr had made "slower progress" on its Core Suite as a direct result of "diversif[ying] the business and focus[ing] on scaling our CCaaS business." ¶¶114–15. Sarin acknowledged that Sprinklr's "focus on succeeding in our CCaaS business slowed progress with some of our other go-to-market initiatives in our core product suites, much more than we had anticipated." *Id.* This was the first time the Company identified any adverse impact from shifting focus away from Core Suite.

Defendants also confirmed that diverting resources had reduced sales and renewals in Core Suite, leading to lowered growth expectations for the upcoming fiscal year. ¶¶116–17. As a result of this disclosure, Sprinklr's stock price dropped by a statistically-significant $5.74, or 34%. ¶118.

To stem the damage of this disclosure, Defendants hid the full extent of the damage caused by the concealed diversion of resources, and misleadingly claimed that the "overrotation" issue had been resolved when it had not. ¶¶119–20. Even worse, Sarin falsely reaffirmed that Sprinklr remained on track to generate $1 billion in subscription revenue by FY2027, when it was not. ¶121.

On June 5, 2024, the other shoe dropped when Sprinklr finally admitted it was not positioned to generate $1 billion in subscription revenue for FY2027, and Defendants admitted that the negative effects of their disastrous diversion of resources were not resolved earlier that year as they had told investors, but continued to hurt the Company. ¶¶131–35. Consequently, Sprinklr's share price fell $2.51, or 23.15%. ¶136. That same day, in direct response to this disclosure, Sprinklr announced that Thomas would be demoted. ¶137.

5

## III.   ARGUMENT

### A.   Applicable Pleading Standards Do Not Favor Dismissal

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff "need only allege enough facts to state a claim to relief that is plausible on its face." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 n.12 (2011).[2] On a Rule 12(b)(6) motion, a court must accept all well-pled factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and determine whether the plaintiff may be entitled to relief under any reasonable reading of the complaint. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007). At this stage, "the court's task is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Nutriband, Inc. v. Kalmar*, 2020 WL 4059657, at *6 (E.D.N.Y. July 20, 2020).[3]

### B.   The Complaint Adequately Alleges Misrepresentations and Omissions

#### 1.   Defendants omitted material facts from their discussion of Core Suite and Sprinklr Service

Plaintiffs' Complaint easily satisfies the particularity requirements of Rule 9(b) and the PSLRA. Under Rule 9(b), "a complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Empls.' Ret. Sys. of Gov't of the Virgin Islands v.*

---

[2] All internal citations and quotations omitted, unless stated otherwise, and all emphasis is added, unless otherwise noted.

[3] Defendants improperly cite to cherry-picked filings that are outside the Complaint. *See* ECF 48 & Exhs. 1-3 thereto. "In deciding a motion to dismiss, the Court may only consider the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *In re OSI Pharms., Inc. Sec. Litig.*, 2007 WL 9672541, at *3 (E.D.N.Y. Mar. 31, 2007). These documents should not be considered, unless the Court chooses to convert Defendants' motion into one for summary judgment. *Id*. Plaintiffs take no position on Defendants' submission of documents relied upon as part of the moving allegations of the Complaint (*see* ECF 48 & Exhs. 4-20 thereto) except to note that Defendants do not dispute that they are accurately quoted in the Complaint and that the Court should only refer to such external documents to "determine what statements the documents contain, not for the truth of the matters asserted." *In re Chembio Diagnostics, Inc. Sec. Litig.*, 586 F.Supp.3d 199, 216 (E.D.N.Y. 2022).

*Blanford*, 794 F.3d 297, 305 (2d Cir. 2015). "The PSLRA's requirements are similar, stating that the complaint must specify the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *Id*.

The Complaint details how Defendants concealed from their discussions of the businesses the secret diversion of resources from Core Suite to Sprinklr Service; that the risks had already started to materialize in multi-million dollar Core Suite contract cancellations, failed Core Suite sales, and failed Core Suite renewals; and significant known impediments to Sprinklr Service. ¶¶88–89, 92–95, 107–08, 109–10.[4] The Complaint identifies each statement alleged to be misleading, who made the statement, how, when and where such statements were disseminated, and why Plaintiffs contend each statement is misleading. *Id*. No more is required. *In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at *18–19 (E.D.N.Y. May 20, 2020).

By touting supposed prospects of Core Suite and Sprinklr Service, Defendants undertook "a duty to tell the whole truth," even if there was no "independent duty to disclose [such] information." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014); *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 251 F.Supp.3d 596, 612 (S.D.N.Y. 2017) (same). When Defendants "make[] statements about [their] product, [they are] required to disclose information that would render those statements not misleading." *In re Delcath Sys., Inc. Sec. Litig.*, 36 F.Supp.3d 320, 332 (S.D.N.Y. 2014). Even if some statements could be construed as literally true, "the law is well settled that so-called 'half-truths' … will support claims under the securities laws." *In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, at *15 (S.D.N.Y. Mar. 12, 2024) (collecting cases). The concealed information was known by and readily available to Defendants when they made their statements. Both Thomas and Sarin

---

[4] Defendants attack ¶¶127–29, but Plaintiffs never alleged those statements to be actionable. Further, Plaintiffs withdraw ¶¶86–87 as an actionable statement. A chart of all alleged actionable misstatements and omissions is attached as **<u>Exhibit A</u>** to the Declaration of Christopher P.T. Tourek.

admitted in December 2023 that they had directed the diversion of resources and manpower away from Core Suite and toward Sprinklr Service at the beginning of 2023. ¶¶140–41; *see Alpha Cap. Anstalt v. Intellipharmaceuticals Int'l Inc.*, 2020 WL 3318029, at *1–3 (S.D.N.Y. June 18, 2020) (defendant's admission supported falsity).

A parallel case is *Galestan v. OneMain Holdings, Inc.*, where defendants—like here—concealed a shift in focus of the business and starving the core business of adequate resources and training, "all of which Defendants allegedly knew, and failed to disclose, had caused productivity to decrease, delinquencies to increase, and growth to slow." 348 F.Supp.3d 282, 287, 298 (S.D.N.Y. 2018). The Court found positive statements about the new business, overall operations, and financial performance actionable because they misrepresented the actual state of affairs of the company, which already began to experience negative effects. *Id*. at 291–94, 298–300. The same is alleged here. *See* ¶¶68–72, 75, 77 (describing Defendants' undisclosed shift in focus); ¶¶88–92 (detailing Defendants' failure to disclose the known resulting risks in misleadingly positive characterizations to investors); ¶¶84, 104, 114–17, 119, 150–51, 159 (documenting Defendants' knowledge). The same result should follow here.

Other cases in this Circuit confirm the principle that omitting known risks from affirmative statements is actionable. *Grab*, 2024 WL 1076277, at *15 (collecting cases); *Freudenberg v. E*Trade Fin. Corp.*, 712 F.Supp.2d 171, 192 (S.D.N.Y. 2010); *In re Citigroup Inc. Sec. Litig.*, 753 F.Supp.2d 206, 240 (S.D.N.Y. 2010). This is especially the case when the known risks had already begun to materialize in the form of cancelled contract and failed sales/renewals. ¶84. Given the importance of the businesses and the risks concealed, there can be no question that "a reasonable investor would have viewed [them] as having significantly altered the total mix of information made available to the market." *Calfo v. Messina*, 2016 WL 3661548, at *6–7 (S.D.N.Y. July 5, 2016).

Defendants wrongly claim that they disclosed the risks of Sprinklr Service. *See* DM 10–11.

8

But the statements to which they point are only vague allusions that fall far short of "disclos[ing] hard facts critical to appreciating the magnitude of the risks described." *Meyer v. Concordia Int'l Corp.*, 2017 WL 4083603, at \*4–5 (S.D.N.Y. July 28, 2017). Moreover, because the risks had already begun to occur, "the warnings are unavailing." *Winter v. Stronghold Digital Mining, Inc.*, 686 F.Supp.3d 295, 309 (S.D.N.Y. 2023) (where risks allegedly already occurred); *United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*, 2024 WL 1312593, at \*5 (S.D.N.Y. Mar. 27, 2024). Here, the statements Defendants cite were made in June and September of 2023, **after** Defendants made numerous actionable misstatements **and after** those risks started to materialize in failed sales/renewals. ¶¶88–89, 92–93.

Significantly, Defendants' cited language makes no mention of the specific concealed risks alleged. It does not disclose that Sprinklr diverted resources from Core Suite, that it relied on salespeople lacking CCaaS experience, or that Sprinklr ordered them to sell Sprinklr Service to Core Suite contacts who were not CCaaS purchasers. Thus, even under their own standard, Defendants did not sufficiently disclose those risks. *See* DM 10–11. Defendants merely needed to be honest, not "depict facts in a negative or pejorative light[,]" as held in *Singh v. Schikan*, 106 F.Supp.3d 439, 448 (S.D.N.Y. 2015). Instead, they chose not to disclose known, serious negative information when touting Sprinklr's new venture to investors.

Defendants also urge the Court to draw an improper inference against Plaintiff, to construe Thomas's statement to investors on December 6, 2023 about fixing the problems caused by the secret diversion of resources as something other than what he actually said. DM 15–16. Plaintiff is entitled to the fair inference of the words Thomas actually used: "the fix is quite obvious to all of us" and is "**what we are doing now**." ¶119. While reasonable jurors might disagree at trial, such disputes have no basis here where all plausible inferences are to be afforded to Plaintiffs. *Nutriband*, 2020 WL 4059657, at \*6. Moreover, even if technically true (it was not), the statement still failed to come clean

about the extent of damage done and time needed to resolve the damage, and therefore would still provide liability. At this pleading stage, there can be no question that the statements remain actionable. *Grab*, 2024 WL 1076277, at *15.

> 2. **Defendants made false and misleading statements about the effects of Sprinklr's secret diversion of resources**

The Complaint also alleges that Defendants materially misrepresented the present state of affairs at Sprinklr by claiming that Sprinklr was seeing progress and growth in all of its businesses, when in fact its main business, Core Suite, was in distress as a direct result of Sprinklr's undisclosed decision to rob it of resources so Sprinklr could launch Sprinklr Service with minimal new hires. ¶¶97–98, 105–12, 119–20. The wide divergence between Defendants' boastful claims about Core Suite and Sprinklr Service, and the actual status of those businesses is classic evidence of falsity. *See In re SolarEdge Techs., Inc. Sec. Litig.*, 2025 WL 1031154, at *8 (S.D.N.Y. Apr. 6, 2025) (claims of strong demand when demand was allegedly weak are actionable).

Contrary to Defendants' claims, Plaintiffs have not alleged that "Sprinklr inaccurately reported [its sales] data[,]" DM 14, but instead that Defendants omitted critical information and misstated the successes of Core Suite and Sprinklr Service ***from positive statements about those specific businesses***. Thus, this Action is nothing like cases involving omission of unrelated information from accurate reports of sales data. *See SolarEdge*, 2025 WL 1031154, at *8; *contra In re Sanofi Sec. Litig.*, 155 F.Supp.3d 386, 404–05 (S.D.N.Y. 2016); *Abely v. Aterna Zentaris, Inc.*, 2013 WL 2399869, *11–12 (S.D.N.Y. May 29, 2013). Here, the omitted adverse information was essential to understanding the biased information reported.

Defendants wrongly criticize Plaintiff for not providing minute details Defendants withheld about "how many contracts were cancelled[.]" DM 15. Such specificity is not required at this stage. The Complaint adequately alleges, through well-situated CWs, known impediments that undermined Defendants' public statements, which are disclosed in sufficient detail. No further quantification need

10

be alleged. *See Blanford*, 794 F.3d at 307 (crediting CW allegations about inventory buildup over criticism that specific amount of excess inventory should have been quantified); *New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 13–14 (2d Cir. 2011) (crediting allegations of "inventory problems" and problems with sales and operations, even absent specific quantification of amounts); *see also Galestan*, 348 F.Supp.3d at 302 ("At this early stage of litigation, and even with the heightened pleading standards of Rule 9(b) and the PSLRA, the Court does not require the pleading of detailed evidentiary matter[s] in securities litigation."). And, that a substantial magnitude of contracts were cancelled was borne out by CWs alleged with particularity that must be accepted at the pleading stage, *infra* at Section III(C)(3), and reflected in the business damage admitted in the two partial disclosures, ¶¶114–18, 131–36. That investors deemed the withheld information sufficiently large to sell off the stock cannot be doubted; the full dollar value of the business problems concealed by Defendants will be tabulated in discovery.

### 3.    Defendants omitted material facts from their discussion of the inflated guidance

The Complaint cogently pleads that at the time that Defendants told investors to expect $1 billion in annual subscription revenue by FY2027, they had no reasonable basis to believe that amount could be met. ¶¶99–100, 121–22. By choosing to tout this bold figure, Defendants assumed "an obligation to ensure [their] statements were both accurate and complete." *Inv. Tech.*, 251 F.Supp.3d at 612. Yet, they chose only to disclose the positive aspect—an extremely aggressive but baseless revenue expectation—and kept hidden the substantial, known impediments that were already hurting their business and undermining the prospect of reaching that figure. Defendants' unbalanced presentation was a classic half-truth, and breach of their obligation to be fully truthful about the matters they elected to address. *See, e.g., Galestan*, 348 F.Supp.3d at 290–93, 298–300, 304.

That the statements involved guidance rather than historical results provided no license to fabricate. *Id.* at 293. Guidance statements are actionable where, as here, plaintiff adequately alleged

11

that defendants' shift in strategy "negatively impacted" the business "such that it was not reasonably likely that the Company would achieve" the touted guidance. *Id.; see Rudani v. Ideanomics, Inc.*, 2020 WL 5770356, at *6 (S.D.N.Y. Sept. 25, 2020) (revenue projections actionable because plaintiff "lacked a reasonable basis" for the revenue estimates and were aware of undisclosed facts that reduced the likelihood that defendants would hit the revenue estimates); *Grab*, 2024 WL 1076277, at *15 (collecting cases); *Calfo*, 2016 WL 3661548, at *6–7; *Freudenberg*, 712 F.Supp.2d at 192; *Citigroup*, 753 F.Supp.2d at 240. By doubling down in December 2023 on their baseless and inflated guidance when they were not in fact on track to generate $1 billion in subscription revenue by Fiscal Year 2027 (¶¶121–23), Defendants "misled investors and analysts." *Galestan*, 348 F.Supp.3d at 291–92, 298–300, 304.

Defendants' argument to the contrary is misplaced. *See* DM 16–19. *Lefkowitz v. Synacor, Inc.* provides them no cover. There, this Court applied the safe harbor only because those plaintiffs alleged no facts to suggest that defendants knew projections would not be realized. 2019 WL 4053956, at *9 (S.D.N.Y. Aug. 28, 2019). Here, the Complaint outlines Defendants' knowledge of failed sales and renewals resulting from their concealed decision to divert essential resources from Core Suite to Sprinklr Service, and the known impediments in Sprinklr Service. ¶¶84, 104, 122, 139–68. These facts directly undermined Defendants' inflated guidance, which lacked any reasonable basis. Moreover, as discussed in Section III(B)(7), the safe harbor provides Defendants' no protection because the guidance statements sounded in omission, were not accompanied by meaningful cautionary language, and were made while Defendants had actual knowledge of contradictory facts. *Infra* at Section III(C)(1).

### 4. Defendants' truth-on-the-market defense fails

Defendants' Motion hinges on the false proposition that Defendants fully disclosed Sprinklr's secret diversion of resources from Core Suite to Sprinklr Service, and the negative impact it had on

Sprinklr's business. DM 9–15. The Complaint alleges the opposite with well-pleaded facts, and Defendants' truth-on-the-market defense can only be resolved by a jury. "Courts routinely reject similar arguments at the motion to dismiss stage because the truth-on-the-market defense is intensively fact-specific and is rarely an appropriate basis for dismissing a Section 10(b) complaint." *In re Teva Sec. Litig.*, 671 F.Supp.3d 147, 197–98 (D. Conn. 2023) (collecting cases); *Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F.Supp.3d 381, 394–95 (S.D.N.Y. 2022). To establish this defense, Defendants must show that "the corrective information that was conveyed to the public was done so with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged misstatements." *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *7 (S.D.N.Y. Mar. 30, 2021). They have not, and will be unable to do so at trial.

Defendants mistakenly assert that they disclosed their diversion of resources and its adverse impact on Core Suite sales, but the statements to which they point say nothing of the sort. DM 11–15. They merely say CCaaS would be a "big focus" and completely omit mention of stripping resources from Core Suite. ¶88. In fact, they suggest the opposite, claiming that a separate, experienced salesforce had been hired for Sprinklr Service. *See In re Comverse Tech., Inc. Sec. Litig.*, 543 F.Supp.2d 134, 150 (E.D.N.Y. 2008) (truth-on-the-market defense insufficient where the alleged disclosure was not "intense or credible enough" to inform investors of the truth). This case bears no semblance to *Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at *80 (S.D.N.Y. Sept. 19, 2024), where disclosures about the Ukrainian war obviously foreshadowed risks of Russian sanctions.[5] Significantly, *none* of the language that Defendants cite even mentions Core Suite. DM 11–12. Similarly, the data that Defendants refer to—but conspicuously do not include—is not segmented between Core Suite and Sprinklr Service so investors could not unpack the impact of diversion from

---

[5] Defendants' reliance on *In re Bank of Am. AIG Disclosure Sec. Litig.* is further afield. That case involved disclosing information ***already reported in the media***. 980 F.Supp.2d 564, 579 (S.D.N.Y. 2013)

one business to another, and is buried on page 57 of a 177-page Form 10-K. *See* ECF 48-10 at 12. For the Court's convenience, Plaintiffs provide subscription revenue data from the 10-K Defendants cite as **Exhibit B** to the Declaration of Christopher P.T. Tourek.

Accordingly, even a sharp investor had no way to discover the truth Defendants concealed. *See In re MBIA, Inc., Sec. Litig.*, 700 F.Supp.2d 566, 584 (S.D.N.Y. 2010) (rejecting truth-on-the-market defense under similar circumstances); *Sgalambo v. McKenzie*, 739 F.Supp.2d 453, 480 (S.D.N.Y. 2010) (similar); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 618 F.Supp.2d 311, 324–25 (S.D.N.Y. 2009) (collecting cases) (scattered and buried disclosures insufficient "to disclose the material facts to reasonable investors"). Worse, the financial data referenced was "counteracted by contemporaneous [misleading] statements by" Defendants about the success of Core Suite and Sprinklr Service, ¶¶92, 94, 97, 105, 107, 109, 111, negating any truth-on-the-market defense. *Lapin v. Goldman Sachs Grp., Inc.*, 506 F.Supp.2d 221, 238–39 (S.D.N.Y. 2006).

5.      **Defendants' statements were not vague puffery**

Defendants incorrectly contend that certain misrepresentations were immaterial puffery. DM 23–24. But, at the pleading stage, a court "may deem a statement immaterial as a matter of law" only "when it is ***so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance***." *Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F.Supp.2d 223, 244 (S.D.N.Y. 2012). Moreover, "[w]hile certain statements, viewed in isolation, may be mere puffery, when the statements are made repeatedly in an effort to reassure the investing public about matters particularly important to the company and investors, those statements may become material to investors." *Vale*, 2020 WL 2610979, at *12. Statements are ***not*** puffery where, as here, "they constitute misrepresentations of existing facts and the speaker knew the contrary was true." *Axsome*, 2025 WL 965265, at *7; *see also In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F.Supp.2d 277, 318 (S.D.N.Y. 2013).

14

The misrepresentations alleged here are not obviously immaterial and are not puffery. Many are precise (though false) statements about the status of Core Suite and Sprinklr Service. *See*, *e.g.*, ¶¶92, 94, 97, 105, 109; *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F.Supp.3d 111, 173 (S.D.N.Y. 2021) (statements about a business's status is grounded in historical facts); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F.Supp.2d 512, 573 (S.D.N.Y. 2011) (similar). Additionally, Defendants made their statements with knowledge of contradictory facts. ¶¶92, 94, 97, 105, 109, 111, 119; *Axsome*, 2025 WL 965265, at *7.

Even if some contain "adjectives that may be vague in other circumstances," the key statements alleged "are sufficiently specific to survive a motion to dismiss given their context and clear inaccuracy." *Vale*, 2020 WL 2610979, at *10 (citing *Novak v. Kasaks*, 216 F.3d 300, 315 (2d Cir. 2000)). For example, many were tethered to false descriptions of the success of Core Suite and Sprinklr Service. ¶¶94, 97, 105. Defendants' characterization of specific aspects of Sprinklr's business in positive terms when the contrary is true is not puffery. *Ark. Tchr. Ret. Sys. v. Bankrate, Inc.*, 18 F.Supp.3d 482, 485 (S.D.N.Y. 2014); *Manavazian v. Atec Grp., Inc.*, 160 F.Supp.2d 468, 480–81 (E.D.N.Y. 2001); *contra In re Sanofi-Aventis Sec. Litig.*, 774 F.Supp.2d 549, 565 (S.D.N.Y. 2011) (one vague statement plaintiffs conceded was pure hyperbole was puffery). Here, Defendants' statements were "made to reassure investors as to specific risks" and therefore "cannot be dismissed as 'mere puffery.'" ¶¶94, 97, 105, 109, 111, 119; *Wash. State Inv. Bd. v. Odebrecht S.A.*, 461 F.Supp.3d 46, 74 (S.D.N.Y. 2020); *see also Vale*, 2020 WL 2610979, at *12; *In re Petrobras Sec. Litig.*, 116 F.Supp.3d 368, 381 (S.D.N.Y. 2015).

Defendants' reliance on *In re Nokia Ojy (Nokia Corp.) Sec. Litig.* is misplaced. There, the defendants were not aware of facts undermining their positive statements. 423 F.Supp.2d 364, 397–99 (S.D.N.Y. 2006). Conversely, Defendants here *were* fully aware of the problems they concealed. ¶¶84, 104, 122, 139–68. Another court has distinguished *Nokia* on this precise ground. *In re Moody's*

15

*Corp. Sec. Litig.*, 599 F.Supp.2d 493, 508–09 (S.D.N.Y. 2009), *opinion corrected on denial of reconsideration*, 612 F.Supp.2d 397 (S.D.N.Y. 2009).[6]

### 6.    Defendants' statements were not inactionable opinions

Nor are Defendants' misleading statements protected as opinions. DM 22–23. As an initial matter, most were articulated as facts rather than softened with signals like "believe" or "think." *See* ¶¶92, 94, 109, 119, 121; *Nutriband*, 2020 WL 4059657, at *9. Moreover, even "[s]tatements of opinion may be actionable misstatements if (1) the speaker did not hold the belief she professed, (2) the supporting fact[s] she supplied were untrue or (3) the stated opinion omits material facts about the [speaker's] inquiry into or knowledge concerning a statement of opinion, and if those facts conflict with what a reasonable investor would take from the statement itself." *Axsome*, 2025 WL 965265, at *7 (quoting *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189–90, 194 (2015)); *see also Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020) ("[P]laintiffs can allege that a statement of opinion, without providing critical context, implied facts that can be proven false."). In *Axsome*, this Court rejected a similar argument, holding that because plaintiffs sufficiently alleged that defendants omitted material facts that conflicted with what a reasonable investor would take away from defendants' statements, the statements were actionable. 2025 WL 965265, at *7.

The same result should follow here. Defendants knew that they starved Core Suite of resources and disincentivized its sales, knew that they had not built the dedicated salesforce they said was the cornerstone of their CCaaS marketing, and knew of failed Core Suite sales and cancellations, but chose to omit that adverse information from their statements. ¶¶84, 139–68. This is a far cry from Defendants' cited cases, where plaintiffs failed to allege specific contradictory but omitted facts. *See*

---

[6] Defendants also cite *Rombach v. Chang*, but there, the plaintiff failed to satisfy the basic pleading requirements by outlining why the alleged misstatements were false. 355 F.3d 164, 174–75 (2d Cir. 2004). Plaintiffs here do. ¶¶88–89, 92–95, 97–100, 105–12, 119–22.

*In re Adient plc Sec. Litig.*, 2020 WL 1644018, at *16 (S.D.N.Y. Apr. 2, 2020); *Schaffer v. Horizon Pharma PLC*, 2018 WL 481883, at *10 (S.D.N.Y. Jan. 18, 2018). This is also not like *Tongue v. Sanofi* where the cited facts did not directly contradict Defendants' statements. 816 F.3d 199, 210–14 (2d Cir. 2016). Consequently, whether or not classified as "opinions," Defendants' statements are actionable.

       **7.**      **Defendants' statements were not forward-looking or protected by the safe harbor**

Defendants erroneously contend that certain statements are forward-looking and immunized by the PSLRA's safe harbor. DM 16–21. But, as this Court explained in *Axsome*, "[c]ourts in this circuit have consistently held that neither the PSLRA safe harbor, nor the bespeaks-caution doctrine protects material omissions." 2025 WL 965265, at *6 (collecting cases); *see also Galestan*, 348 F.Supp.3d at 304; *In re Salix Pharms., Ltd.*, 2016 WL 1629341, at *9 (S.D.N.Y. Apr. 22, 2016). Thus, the omissions identified in ¶¶88–89, 92–95, 99–100, 107–10, and 121 cannot be shielded.

Further, many statements Defendants reference are not forward-looking at all, and none are accompanied by meaningful cautionary language. Statements that "communicate present facts about [defendant's] business … are not protected." *In re Fairway Grp. Holding Corp. Sec. Litig.*, 2015 WL 249508, at *9 (S.D.N.Y. Jan. 20, 2015) ("*Fairway I*"). The "safe harbor provision does not apply to any allegedly false statement that has both a forward-looking aspect and an aspect that encompasses a representation of present fact." *Salix Pharms.*, 2016 WL 1629341, at *9–10 (collecting cases) (holding that representations of current fact are not subject to the safe harbor). This is especially the case where statements, like here, were in direct response to specific questions from analysts, *see Celestica*, 455 F. App'x at 15, as many were here, ¶¶88–89, 105–12, 119–22.

For example, Defendants spoke about past and present conditions, often in direct response to questions from analysts. *See, e.g.,* ¶88 ("we ***have been hiring people*** from traditional contact center companies. ***We have -- we're building out and have built out*** a team of dedicated specialists") ¶107

17

("*we're not seeing* any different behavior this quarter or last quarter"); ¶121 ("there is nothing that *we are seeing today* that would give us any cause for concern"). Others statements concerned continuing present performance. *See, e.g.,* ¶86. Those are mixed statements of future and present fact not subject to the safe harbor. *See In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 246 (2d Cir. 2016).

The few statements that contain a forward-looking aspect lacked *meaningful* cautionary language. The language Defendants reference is boilerplate "kitchen-sink disclaimer, listing garden-variety business concerns that could affect *any* company's financial well-being," providing no protection. *Vivendi*, 838 F.3d at 246–47. It does "not specifically reveal the particular risks allegedly known." *In re Symbol Techs., Inc. Sec. Litig.*, 2013 WL 6330665, at *15 (E.D.N.Y. Dec. 5, 2013). It does not even mention known risks specific to Core Suite, Sprinklr Service, or Defendants' decision to shift resources away from Core Suite. DM 20–21. And it "remained the same even while the problem changed." *Slayton v. Am. Express Co.,* 604 F.3d 758, 771, 773 (2d Cir. 2010) (dismissing on other grounds).

Furthermore, the language Defendants cite spoke about risks as hypothetical when they had already begun to materialize. ¶84. "Cautionary words about future risk cannot insulate from liability the failure to disclose that the risk has transpired." *Axsome*, 2025 WL 965265, at *6. Thus, this case is nothing like cited cases involving risks that had not yet begun to appear. *See Bank of Am.*, 980 F.Supp.2d at 579; *In re Curaleaf Holdings Sec. Litig.*, 519 F.Supp.3d 99, 107–08 (E.D.N.Y. 2021); *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *11 (S.D.N.Y. Apr. 14, 2020); *Sharette v. Credit Suisse Int'l*, 127 F.Supp.3d 60, 88 (S.D.N.Y. 2015); *In re Nortel Networks Corp. Sec. Litig.*, 238 F.Supp.2d 613, 629 (S.D.N.Y. 2003); *In re Prudential Sec. Inc. Ltd. Partnerships Litig.*, 930 F. Supp. 68, 72 (S.D.N.Y. 1996).

Finally, as outlined in Section III(C), the safe harbor cannot apply because the Complaint "sufficiently alleges the actual knowledge prong" by "rais[ing] a strong inference" of scienter.

*Axsome*, 2025 WL 965265, at \*7. *In re Carter-Wallace Sec. Litig.* does not suggest otherwise—that case did not mention the safe harbor, and those plaintiffs, unlike here, failed to allege scienter. 220 F.3d 36, 42 (2d Cir. 2000).

Nor are other cases cited by Defendants apposite. None involved the circumstances here: material omissions ineligible for safe harbor protection, statements discussing present facts, and no meaningful cautionary language. *See Eden Alpha CI v. Polished.com*, 2025 WL 296998, at \*22–23 (E.D.N.Y. Jan. 24, 2025) (discussions about future success, accompanied by sufficient cautionary language, was inactionable); *In re Anheuser-Busch Sec. Litig.*, 2020 WL 5819558, at \*5 (S.D.N.Y. Sept. 29, 2020) (predictions that did not discuss the present, accompanied by sufficient cautionary language, were inactionable); *Gissin v. Endres*, 739 F.Supp.2d 488, 505–10 (S.D.N.Y. 2010) (predictions actionable where, unlike here, plaintiffs did not "contest the veracity of any present tense portion" or allege that risks had begun to materialize). Defendants' authority, *In re QLT Sec. Litig.*, is instructive. There, the court acknowledged that the safe harbor applied to general expressions of optimism, but held actionable statements, like here, of present fact tethered to specific projections of growth without sufficient cautionary language. 312 F.Supp.2d 526, 532–34 (S.D.N.Y. 2004) (dismissing on other grounds).[7]

Accordingly, just as in *Axsome*, even if portions of statements might be construed as forward-looking, they would still be actionable.

### C.    The Complaint Exceeds the Standard for Pleading Scienter

The standard for pleading scienter, though elevated, is easily met by Complaint allegations. Scienter ***does not*** require a smoking gun, the pleading of evidence, or even that Plaintiff establish that fraud or recklessness is the most compelling inference from the facts alleged. Instead, it is satisfied

---

[7] Defendants erroneously cite *Glidepath Holding B.V. v. Spherion Corp.*, a breach of contract case decided on summary judgment that never discussed the safe harbor. 2010 WL 1372553, at \*9 (S.D.N.Y. Mar. 26, 2010).

whenever, taking the facts alleged as true, the inference that Defendants were intentionally or recklessly misleading is at least as cogent as any non-culpable inference that can be drawn from those same facts. *Tellabs*, 551 U.S. at 324.

> **1.    Defendants had access to, and knowledge of, the concealed information**

Defendants' access to, and actual knowledge of, the concealed information is independently sufficient to establish scienter. "Where the complaint alleges that defendants knew facts or had access to non-public information contradicting their public statements, recklessness is adequately pled for defendants who knew or should have known they were misrepresenting material facts with respect to the corporate business." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001); *see also Delcath*, 36 F.Supp.3d at 335.

Thomas and Sarin admitted in December 2023 that they not only knew about, but oversaw the undisclosed strategy to divert needed resources from Core Suite to Sprinklr Service. ¶¶139–43. This first-hand involvement provided them actual knowledge contradicting their public statements. *See Petrobras*, 116 F.Supp.3d at 382 (finding scienter for executives involved in omitted conduct); *Freudenberg*, 712 F.Supp.2d at 198 (direct involvement showed scienter). Critically, Defendants never address the alleged admissions of involvement, and thus waived any argument to do so in a reply. *See*, *generally*, DM; *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir. 2010) (issues not raised in an opening brief "are generally deemed waived").

Further, Individual Defendants claimed to be extremely hands-on and to frequently speak directly to customers. ¶¶144–52. Thus, Individual Defendants had direct access to information about failing Core Suite sales and renewals, and blowback from their undisclosed diversion of needed resources away from Core Suite—the very items concealed from investors. *Waste Mgmt., Inc.*, 2024 WL 1312593, at *7 (finding scienter for top executive who, as President, CEO, and member of the Board of Directors, had access to information contradicting his public statements); *In re Romeo Power*

*Inc. Sec. Litig.*, 2022 WL 1806303, at *5 (S.D.N.Y. June 2, 2022) (similar); *Delcath*, 36 F.Supp.3d at 335 (similar); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*, 477 F.Supp.3d 123, 132–34 (S.D.N.Y. 2020) (similar).

Additionally, that both Sarin and Thomas were provided monthly and quarterly sales reports via Salesforce reflecting the actual status of each sales effort removes any question regarding their access to accurate information of failed sales and renewals that they concealed. ¶¶20–21, 152; *BG Litig. Recovery I, LLC v. Barrick Gold Corp.*, 180 F.Supp.3d 316, 326 (S.D.N.Y. 2016) (access to progress reports contradicting public statements established scienter); *Lozada v. TaskUs, Inc.*, 710 F.Supp.3d 283, 323–24 (S.D.N.Y. 2024) (receiving monthly reports with contradictory information helped establish scienter); *In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, 2018 WL 2382600, at *9–10 (S.D.N.Y. May 24, 2018) (similar).

Defendants mistakenly argue that access to Salesforce does not itself show scienter, DM 27, and rely on cases where the plaintiff failed to identify what information was contained in reports or how the information contradicted the defendants' statements. *See Maloney v. Ollie's Bargain Outlet Holdings*, 518 F.Supp.3d 772, 781 (S.D.N.Y. 2021); *In re Barrick Gold Sec. Litig.*, 341 F.Supp.3d 358, 373 (S.D.N.Y. 2018); *Inter-Local Pension Fund GCC/IBT v. Gen. Elec.*, 445 F. App'x 368, 370 (2d Cir. 2011). Here, Plaintiffs *do* identify the information contained in the Salesforce reports and how they contradicted Defendants' statements. Specifically, the Complaint pleads the category of deals that were lost and tracked in Salesforce (Core Suite sales and renewals), contains an admission that those losses were significant to impact both immediate results and long-term plans, and alleges why the loss of those sales contradicted Defendants' public statements. *See, e.g.*, ¶¶20–21, 84, 85, 88, 89, 94, 95, 150, 152. Nothing more is needed at this stage. *See Ray v. StoneCo Ltd.*, 2024 WL 4308130, at *13 (S.D.N.Y. Sept. 25, 2024) (refuting *Maloney* and holding that plaintiffs need not

21

identify specific reports to establish scienter).[8]

Finally, Defendants' disclosure argument, *see* DM 26, is factually and legally wrong. *Supra* at Section III(B)(4). Defendants in no way disclosed the specific information the Complaint alleges was omitted. *Id.*

> **2.    Defendants held themselves out as knowledgeable about misrepresented information**

That Defendants held themselves out as knowledgeable and "made public representations suggesting familiarity" with Core Suite sales status and Sprinklr Service (¶¶82, 88, 92, 94, 97, 99, 101, 105, 107, 109, 111, 114–17, 119, 121, 129, 153–55), and the reaction of Sprinklr customers throughout 2023 and 2024 (¶¶101, 147–51), also establishes their scienter. *Vale*, 2020 WL 2610979, at *17; *see also Waste Mgmt.*, 2024 WL 1312593, at *7. Where, as here, defendants were "regularly quoted on behalf of" the company discussing the misrepresented issues, scienter is easily found. *Shanawaz v. Intellipharmaceutics Int'l Inc.*, 348 F.Supp.3d 313, 326–27 (S.D.N.Y. 2018); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *15 (S.D.N.Y. Nov. 26, 2018) (similar); *Delcath*, 36 F.Supp.3d at 335 (similar). "Actively communicating with the public about [these issues] demonstrates defendants' sensitivity to it." *Gauquie v. Albany Molecular Rsch., Inc.*, 2016 WL 4007591, at *2–3 (E.D.N.Y. July 26, 2016); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 556 F.Supp.3d 100, 133–34 (D. Conn. 2021) (same).

This is especially the case where, as here, a defendant emphasizes his or her personal involvement. *Romeo Power*, 2022 WL 1806303, at *5. *Axsome* found that a CEO's "public statements evinc[ing] a strong familiarity" with the company's operations and his broad personal involvement supported scienter. 2025 WL 965265, at *8–10. Here, Thomas repeatedly told investors that he and

---

[8] Defendants cite to *Novak*, DM 27, but to the extent that *Novak* applies, it supports Plaintiffs. There – like here – defendants made misleadingly positive statements about aspects of their business when they allegedly knew the opposite. 216 F.3d at 309; *supra* at Sections III(B)(1)-(3).

other Sprinklr executives were in constant communication with customers, even touting the number of customer conversations he personally conducted. ¶¶101, 147–51. For this additional reason, as in *Axsome* and *Romeo Power*, Thomas' scienter is easily inferred. Defendants' Motion ignores this basis, and they cannot argue it for the first time on reply. *See Conn. Bar Ass'n*, 620 F.3d at 91 n.13.

### 3.   Plaintiffs' other allegations bolster scienter

Numerous other factors bolster the already strong inference of scienter. That Defendants' actions concerned operations constituting ***approximately 91.2% of its overall revenue***, and the overwhelming majority of that came from Core Suite, ¶¶38–41, 164–65, make it "absurd to suggest that [Defendants were] unaware" of the actual problems they misrepresented and concealed. *In re Avon Sec. Litig.*, 2019 WL 6115349, at *20 (S.D.N.Y. Nov. 18, 2019) (core operations applicable for business segment comprising 21% of revenue); *see also Aegean*, 529 F.Supp.3d at 174 (core operations applies where "events affect[] a significant source of revenue").

Moreover, the temporal proximity between Defendants' misleading statements and the truth being revealed further supports scienter. *See, e.g.*, *In re Pareteum Sec. Litig.*, 2021 WL 3540779, at *16 (S.D.N.Y. Aug. 11, 2021); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 763 F.Supp.2d 423, 517 (S.D.N.Y. 2011). Defendants disclosed the diversion of resources and some of its negative impact on Sprinklr's business in December 2023, just three months after making misleadingly positive statements. ¶¶104–18, 156–57. Similarly, only two months after assuring investors that the negative impact of Sprinklr's "overrotation" had been fixed, Defendants admitted it remained and withdrew their always-baseless $1 billion subscription sales guidance. ¶¶127–36, 158.

Sprinklr was not a business where the Company lacked visibility until the end of a quarter. As confirmed by CW1, Sprinklr booked deals upfront and recognized revenue thereafter, so Defendants knew about the adverse revenue impact of the secret diversion long before it hit the financial

statements. ¶¶159–60.

Unable to dispute either core operations or temporal proximity, Defendants improperly rely on cases holding that either factor *alone* cannot establish scienter. DM 30. The Complaint does not so allege. While not an independent basis, core operations can "provide supplemental support for allegations of scienter." *See Celestica*, 455 F. App'x at 14 n.3; *see also Axsome*, 2025 WL 965265, at *8–10. And Plaintiffs do not contend that temporal proximity *alone* cannot establish scienter. Instead, Plaintiffs also "specifically allege defendants' knowledge of facts or access to information contradicting their public statements," ¶¶139–52, which was lacking in *Pearlstein v. BlackBerry Ltd.*, 93 F.Supp.3d 233, 247 (S.D.N.Y. 2015). Thus, if anything *Pearlstein* highlights the sufficiency of Plaintiffs' allegations.[9]

Thomas's demotion to co-CEO, suspiciously timed right as the full scope of Defendants' fraud was revealed on June 5, 2024, and his subsequent resignation on November 5, 2024, also contribute to scienter. ¶¶161–63; *Van Dongen v. CNinsure Inc.*, 951 F.Supp.2d 457, 474 (S.D.N.Y. 2013) (collecting cases); *Ho v. Duoyuan Glob. Water, Inc.*, 887 F.Supp.2d 547, 575 (S.D.N.Y. 2012). Unlike Defendants' authority, Plaintiffs allege—and Thomas's own words confirm—that his demotion was directly linked to the fallout from the concealed risks. ¶162. Defendants' cited cases, where the resignations were not linked to the undisclosed risks, have no bearing here. *See Glaser v. The9, Ltd.*, 772 F.Supp.2d 573, 598 (S.D.N.Y. 2011); *Denny v. Canaan*, 2023 WL 2647855, at *14 (S.D.N.Y. Mar. 27, 2023). And, Defendants' suggestion that Thomas's continued role as Chair negates scienter, DM 29, is not supported by their out-of-circuit authority. There, the plaintiff failed "to allege any facts to suggest that [defendant] left because of [the fraud]." *In re Jiangbo Pharm., Sec. Litig.*, 884

---

[9] *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.* is similarly inapplicable. There, the Second Circuit never addressed temporal proximity related to scienter, and those plaintiffs pled only conclusory falsity allegations, unlike here. 75 F.3d 801, 812–13 (2d Cir. 1996); *supra* at Sections III(B)(1)-(3).

F.Supp.2d 1243, 1263 (S.D. Fla. 2012). Plaintiffs here do. ¶¶137, 162.

Additionally, Defendants ignore and thus concede that Sprinklr's hiring spree in early 2024 is conduct showing their knowledge that dedicated CCaaS-experienced salesforce had not **already been hired** in 2023, as they falsely told investors. ¶125; *Conn. Bar Ass'n*, 620 F.3d at 91 n.13.

**4.      Defendants' motive established by Sarin's insider sales**

Though not required, *see Tellabs*, 551 U.S. at 325, the Complaint alleges that Sarin personally benefited from the fraud by selling inflated stock for $2,842,491.31. ¶¶166–67. The Second Circuit has been clear that "motive and opportunity" prong of scienter can be met by such insider sales. *See, e.g.*, *Scholastic,* 252 F.3d at 74–75 (finding "motive and opportunity" where defendant sold substantial stock while withholding information on declining trend of sales); *Novak,* 216 F.3d at 318 (similar); *see also City of Warren*, 477 F.Supp.3d at 136; *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F.Supp.2d 395, 420–22 (S.D.N.Y. 2011). Defendants' authority, *In re QLT Inc. Sec. Litig.*, affirmed this principle, holding that trades completed by a defendant provided concrete benefits and supported scienter especially because (as here) defendants "were in position to control the information released to the public." 312 F.Supp.2d at 535.[10]

Nevertheless, Defendants erroneously claim that Sarin was free to engage in insider sales pursuant to a trading plan. *See* DM 25. This is not the law. Because Sarin entered into his trading plan **during the class period** (¶167), Defendants "may not invoke the plan['s] existence to disarm any inference of scienter raised by" Sarin's insider sales. *George v. China Auto. Sys., Inc.*, 2012 WL 3205062, at *9–10 (S.D.N.Y. Aug. 8, 2012); *see also Freudenberg*, 712 F.Supp.2d at 200–01 (collecting cases). His net share dump is the opposite of Defendants' cited case, *Ark. Pub. Empls. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F. 4th 343, 357 n.4 (2d Cir. 2022), where defendants **bought**

---

[10] Defendants do not challenge, and therefore concede, that they had the opportunity to commit fraud. DM 25–26; *Conn. Bar Ass'n*, 620 F.3d at 91 n.13.

more stock than they sold.

Further, Sarin entered into his trading plan with inside adverse information, nullifying any protection. He inked the plan on June 15, 2023, when Sprinklr's stock was trading at a then-high of $15, and *after* Defendants had begun to secretly divert needed resources from Core Suite and misrepresent the Sprinklr Service salesforce to investors. Accordingly, this is the opposite of *In re CRM Holdings, Ltd. Sec. Litig.*, where the court noted the trading plan was *not* entered "at the height of the market, allowing [defendant] to capitalize on the inflated value of the stock[,]" 2012 WL 1646888, at *25 (S.D.N.Y. May 10, 2012).

Defendants' claim to be unable for find allegation that these sales were unusual "in amount or timing," DM 25, lacks merit. Complaint allegations set forth *two news articles* devoted to the suspicious and unusual nature of the sales. ¶168. That multiple contemporaneous observers found the trades to be suspicious negates any argument that a non-culpable inference should now be assumed more compelling. *Tellabs*, 551 U.S. at 328–29. Defendants' reference to Thomas's lack of sales, DM 25, is irrelevant. The failure of one defendant to sell his stock does not negate the scienter of a selling defendant. *Van Dongen*, 951 F.Supp.2d at 476 (distinguishing Defendants' authority, *Acito v. IMCERA Grp.,* 47 F.3d 47 (2d Cir.1995)). Indeed, such arguments only highlight that "direct discovery from the individuals involved explaining their conduct" is needed and dismissal unwarranted. *Id*.

Finally, Defendants erroneously argue that Sarin's scienter was somehow immunized by his employer's repurchases. *See* DM 26. Their cited authority does not so hold. In *Frankfurt-Tr. Inv. Luxemburg AG v. United Techs. Corp.*, the plaintiff made no showing of insider sales and tried to argue that share repurchases demonstrated scienter. 336 F.Supp.3d 196, 225 (S.D.N.Y. 2018). Because Plaintiffs *do* show that Sarin made numerous suspicious insider sales during the Class Period, *Frankfurt-Tr.* has no bearing here. *See also Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at

26

*17 n.15 (D.N.J. July 27, 2018) (collecting cases) (a "stock repurchase plan weighs neither in favor of nor against an inference of scienter").

### 5.    The CWs substantiating scienter are pled with sufficient particularity

The test for crediting CWs in the Second Circuit is a "liberal standard" and does not require direct interaction with a defendant or an admission by a defendant as to his state of mind. *City of Warren*, 477 F.Supp.3d at 132–34 (crediting indirect, hearsay account of confidential witness); *see also Chicago Bridge & Iron*, 2018 WL 2382600, at *10 ("That some of the CW's lacked direct contact with the Individual Defendants does not undermine their evidence"). A court must take a CW's statements as true at the pleading stage, so long as the CW was in a position to know the information reported. *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F.Supp.3d 379, 405–08 (S.D.N.Y. 2020). Even CW accounts that may not independently be sufficient are credited when they corroborate other facts pled in the complaint. *See In re ForceField Energy Inc. Sec. Litig.*, 2017 WL 1319802, at *9 (S.D.N.Y. Mar. 29, 2017).

Here, the Complaint details each CW's positions and duties at Sprinklr, and the times and scope of employment. ¶¶37, 42–43, 63, 67, 76. Because it documents "each witness's position, length of employment, and job responsibilities," the information the CWs provide must be credited. *Blanford*, 794 F.3d at 307; *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 123–24 (2d Cir. 2013). The CWs confirmed that Defendants secretly diverted resources and manpower from Core Suite to Sprinklr Service, and that decision almost immediately resulted in cancelled contracts, failed sales, and non-renewals. ¶¶66–84, 104, 125. "Considered collectively with the other allegations in the complaint, the CWs' allegations that [Sprinklr] presented baseless [claims of success] and growth projections, and intentionally concealed its shortcomings from the investing public, add to the circumstantial evidence of recklessness on the defendants' part." *Fairway I*, 2015 WL 249508, at *16.

27

Defendants erroneously suggest these well-pled allegations be ignored because only one CW had direct contact with Thomas. DM 27–28. But CWs' information "need not be based on direct contact with the Individual Defendants to be reliable." *Axsome*, 2025 WL 965265, at *9; *see also Avon*, 2019 WL 6115349, at *21.

Defendants' cited authority is distinguishable. The CWs in *In re Fairway Grp. Holdings Corp. Sec. Litig.* spoke to defendants' state of mind, rather than what they themselves observed. 2015 WL 4931357, at *17–19 (S.D.N.Y. Aug. 19, 2015). *In re Lululemon Sec. Litig.* involved CW accounts that failed to support falsity , unlike here where CWs outline undisclosed but internally known adverse information that directly undermined Defendants' misleading Class Period statements. 14 F.Supp.3d 553, 579–81 (S.D.N.Y. 2014). Finally, *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.* held that CWs who were mostly low-level employees or outside contractors were not positioned to know whether defendants received contradictory information. 724 F.Supp.2d 447, 459–61 (S.D.N.Y. 2010). Here, by contrast, CWs addressed an internally-known but externally-hidden diversion of resources and its devastating impact, and the Complaint alleges why they were positioned to know the information reported. ¶¶37–39, 42–47, 63–64, 67–71, 76–81, 84, 104, 125, 128. Viewed holistically with other factors such as Defendants' own admissions of knowledge, access to contradictory information, statements of authority, and importance of Core Suite, lends further support to the already-strong inference of scienter.

### 6.    Defendants raise no plausible competing inference

While a competing non-culpable inference can negate scienter if it is both plausible and more compelling than an inference of recklessness, Defendants' competing inference is neither and is limited to a single category of misrepresentation: their baseless $1 billion subscription revenue guidance. Defendants implausibly argue the guidance might have been reasonable when made and repeated multiple times, but suddenly became unreachable due to the "congruence of macroeconomic

headwinds, headcount limitations, and elevated customer churn." DM 30. This highly implausible speculation ignores that Defendants admitted the churn was caused by their diversion of resources and the headcount limitation would have no impact if, as they told investors, Sprinklr had already developed a specialized salesforce for CCaaS. ¶¶114–15, 133–34. Further, in December 2023, Thomas explicitly admitted macroeconomic conditions **did not** cause the problem that its lawyers now claim should be assumed responsible. ¶116 ("the macro, we don't think is what's changing. ***It's really our over-rotation that's causing the change*…**").

D.    **The Complaint Sufficiently Alleges Loss Causation**

To plead loss causation, "Plaintiffs' burden is not a heavy one. The complaint must simply give Defendants some indication of the actual loss suffered and of a plausible causal link between that loss and the alleged misrepresentations." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 187 (2d Cir. 2015). A plaintiff may allege "(a) the existence of cause-in-fact on the ground that the market reacted negatively to a corrective disclosure of the fraud; or (b) that the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 232–33 (2d Cir. 2014).

The Complaint alleges Sprinklr shares dropped after: (1) the December 6, 2023 announcement of Sprinklr's secret diversion of resources from Core Suite to Sprinklr Service, and the impact on Sprinklr's business as a result (¶¶114–18); and (2) the June 5, 2024 announcement that the impact of Sprinklr's secret diversion was more severe than initially stated, and it told investors not to rely on their previous but always baseless indication that Sprinklr would generate $1 billion in annual subscription by FY2027 was withdrawn (¶¶131–36). Both corrective events were promptly followed by significant declines in the price of Sprinklr's shares. *See* ¶¶118, 136; *supra* at Section II(E). Accordingly, Plaintiffs have "give[n] Defendants [an] indication of the actual loss suffered." *Loreley*,

29

797 F.3d at 187; *see also Sharette*, 127 F.Supp.3d at 80 (explaining "a short and plain statement that provides the defendant with notice of the loss and its causal connection to the alleged misconduct is therefore sufficient to assert loss causation").

1.    **The Complaint alleges material stock drops following corrective disclosures**

"[A] plaintiff may plead loss causation without alleging a disclosure that precisely mirrors the substance of a prior undisclosed fraud." *In re Take-Two Interactive Sec. Litig.*, 551 F.Supp.2d 247, 285 (S.D.N.Y. 2008). Rather, a disclosure need only "somehow reveal to the market part of the truth regarding the alleged fraud." *Id.*

The two disclosures alleged relate directly to the concealed fraud. The first admitted the existence and part of the impact of Defendants' concealed diversion of needed resources from Core Suite and known impediments in the Sprinklr Service business. ¶¶114–18. The second revealed that Defendants' admitted "overrotation" caused more damage and would take longer to fix than previously revealed, and that its "$1 billion" guidance was unreachable. ¶¶131–36. Accordingly, both "reveal[ed] to the market some part of the truth regarding the ... fraud." *Take-Two*, 551 F.Supp.2d at 285.

Defendants' incredulously claim that "the concealed risks about which Plaintiffs complain were disclosed prior to the alleged corrective disclosures." DM 31. This is both absolutely false—none of the referenced language remotely discloses the actual concealed risks—and highly implausible—if already revealed then there would be no explanation for the statistically-significant stock drops alleged. *See* ¶¶114–18, 131–36. Nor is Defendants' unfounded assertion consistent with Defendants' contemporaneous conduct in explaining the "overrotation" for the first time in alleged disclosure events, or for multiple reporters concluding that Sarin's stock dump while that information remained hidden was suspicious. *Id.* The only plausible explanation is that the corrective events—whether characterized as disclosures or materializations of the concealed risk—informed investors

30

about adverse information which they did not previously know, resulting in significant stock drops. *Id.*

This case is a far cry from the facts in Defendants' cited authority. In *Lentell v. Merrill Lynch & Co., Inc.*, plaintiffs made "no allegation[s] that the market reacted negatively to a corrective disclosure regarding the falsity of" defendants' statements. 396 F.3d 161, 175 (2d Cir. 2005). In *Janbay v. Canadian Solar, Inc.*, plaintiffs failed to even argue corrective disclosures in their opposition. 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012). In *In re AOL Time Warner, Inc., Sec. Litig.*, "[t]he plaintiffs d[id] not allege that the [defendant's statement] was ever the subject of a corrective disclosure." 503 F.Supp.2d 666, 678 (S.D.N.Y. 2007). Plaintiffs here allege such facts. ¶¶114–18, 131–36. Finally, *In re Omnicom Grp. Sec. Litig.* was decided on *summary judgment*, and the parties agreed that no new facts were disclosed. 541 F.Supp.2d 546, 551–53 (S.D.N.Y. 2008).

### 2.    The Complaint also alleges materialization of concealed risks

The negative financial disclosures preceding the two price drops also qualify as materializations of the risk, because the loss in question was "foreseeable [because it was] within the zone of risk concealed by the misrepresentations and omissions alleged by" Plaintiffs. *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 WL 6167889, at *16 (S.D.N.Y. Nov. 26, 2018). Defendants' lack of candor about the undisclosed diversion of resources directly materialized in cancelled contracts, failed sales and non-renewals that lowered overall financial results. ¶¶81, 114–18. That the $1 billion guidance never had any basis in fact, and was further rendered impossible by the adverse impact of Defendants' diversion, as well as the materialization of known impediments to Sprinklr Service, forced Defendants to withdraw the always-inflated guidance. ¶¶99–100, 121–22, 131–35. These outcomes were squarely within the zone of risk created by Defendants' concealment of the truth.

31

**E.        The Complaint Adequately Alleges Violations of §20(a) of the Exchange Act**

Because the Complaint sufficiently pleads claims under Section 10(b) of the Exchange Act, Plaintiffs' claims regarding control person liability should also be sustained. *See, e.g., In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102, at *29–30 (S.D.N.Y. Sept. 30, 2021).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in full. Should Defendants' motion be granted in whole or in part, Plaintiffs respectfully request leave to amend, as "is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Loreley*, 797 F.3d at 190.

Dated: May 1, 2025                                Respectfully submitted,

                                                  **POMERANTZ LLP**

                                                  */s/ Christopher P.T. Tourek*

                                                  Joshua B. Silverman
                                                  (admitted *pro hac vice*)
                                                  Christopher P.T. Tourek
                                                  (admitted *pro hac vice*)
                                                  Diego Martinez-Krippner
                                                  (admitted *pro hac vice*)
                                                  10 South LaSalle Street, Suite 3505
                                                  Chicago, Illinois 60603
                                                  Tel: (312) 377-1181
                                                  Fax: (312) 229-8811
                                                  jbsilverman@pomlaw.com
                                                  ctourek@pomlaw.com
                                                  dmartinezk@pomlaw.com

                                                  *Counsel for Plaintiffs and Lead Counsel for the Class*

                                                  **PORTNOY LAW FIRM**
                                                  Lesley F. Portnoy
                                                  1800 Century Park East Suite 600
                                                  Los Angeles, CA 90067
                                                  Telephone: (310) 692-8883

lesley@portnoylaw.com

*Attorney for Plaintiffs*

34

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.1, as well as Court Rule III(B)(1), I hereby certify that this document complies with the word limit established by the Court's March 10, 2025 Order, ECF 44, and contains 10,495 words, exclusive of the cover page, table of contents, table of authorities, certificates of compliance and service, and signature block. Furthermore, I certify that the accompanying Declaration of Christopher P.T. Tourek, dated May 1, 2025, does not append more than 15 exhibits, each not exceeding 15 pages.

Dated: May 1, 2025                             */s/ Christopher P.T. Tourek*
                                          Christopher P.T. Tourek

35

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 1, 2025, I caused a true and correct copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Dismiss to be filed with the Clerk of the Court using the CM/ECF System, which will send notice of such filings to all registered CM/ECF users.

Dated: May 1, 2025                         */s/ Christopher P.T. Tourek*
                                            Christopher P.T. Tourek

35